## CHANDLER v. SOUTHERN RAILWAY COMPANY.

Where, on the trial of an action against a railway company for personal injuries alleged to have been caused by the negligence of a person designated in the petition as a fellow-servant of the plaintiff (such an action being in this State authorized by statute), he introduced testimony warranting a finding that he sustained such injuries, that they were occasioned by the negligence of that person, and that he was the plaintiff's fellow-servant, it was erroneous to grant a nonsuit, either upon the theory that there was no proof of negligence, or that there was no evidence to show that he who was so charged therewith was in fact such a fellow-servant; and this is true though there may have been some testimony tending to show that the plaintiff was, when he was hurt, a vice-principal of the defendant company.

Submitted March 2, — Decided March 27, 1901.

Action for damages.    Before Judge Prior.    City court of Hall county.    February term, 1900.

*H. H. Perry* and *H. H. Dean*, for plaintiff.    *Dorsey, Brewster & Howell, Sanders McDaniel*, and *F. M. Johnson*, for defendant.

LUMPKIN, P. J.    The error assigned in the present bill of exceptions is the granting of a nonsuit.    The petition alleged that the plaintiff was an employee of the railway company in the capacity of a section hand, and that, while engaged with three other such hands, who were his fellow-servants, in placing a hand-car upon a track of the company, one of them, named Pool, negligently "jerked up" a corner of the car and thus caused the "plaintiff's corner" to fall suddenly to the ground, in consequence whereof he sustained serious physical injuries.    At the trial the plaintiff was introduced as a witness in his own behalf, and testified to facts warranting the conclusion that he was injured in the manner alleged.    On cross-examination he testified:  "M. D. Smith was foreman of that section.    He was not with us the day I was hurt.    I was in charge of the work.    I was acting foreman that day.    I took Mr. Smith's place."    In response to questions asked by his own counsel, the plaintiff further testified in this connection:  "The section boss went off Saturday night and came back Monday morning.    The accident happened Monday morning.    He came up on ten o'clock train Monday morning.    After he ate his dinner, he came on and took charge of the work.    When he left, he just said go ahead with the work where you are at until I come back.    Said to go to work where we were.    I don't know that he told me any more particu-

larly than the others.  I was the only white man there.  The other
hands were darkies.   He gave me no authority to discharge hands
or to hire them.   Pool had been at work there two or three years;
I don't know exactly.   I had no more authority than the others.
I suppose I was in charge of the work—I don't know I had any
more to do with it than the rest.   I don't know that I had any
more authority at all than the rest."

Counsel for the defendant in error insisted here that the case of
the plaintiff fell to the ground, because of a failure on his part to
prove either the alleged negligence of Pool, or that he was the plain-
tiff's fellow-servant.   As to the first point, it is enough to say that
a reading of the evidence will show clearly it is not well taken.
Indeed, it was not stressed by the attorneys for the railway com-
pany.   Their main contention was, that under the testimony of the
plaintiff himself, he was, at the time he was hurt, not a fellow-serv-
ant of Pool, but really his "boss," having taken the place and as-
sumed the duties of Smith, the section foreman.   In other words,
their position was that Chandler was, on the occasion referred to,
a vice-principal, and, as such, represented the company in assuming
control of the work in which he and his colaborers were engaged.
In view of the evidence adduced at the trial, we are not prepared
to say whether Smith himself was, or was not, a vice-principal, for
it was not shown exactly what relation he sustained towards the
plaintiff and his fellow-workmen.   Granting, however, for the sake
of the argument, that Smith was, as claimed, a vice-principal, we
think the testimony, considered as a whole, would have justified the
jury in concluding that he was not, during his absence, superseded
by the plaintiff in that capacity, but that the latter really retained
his customary relation as a fellow-servant of Pool and the other
track hands.   Certainly the jury would not have been constrained
to find that Chandler had authority from the company to act as
section foreman during the temporary absence of Smith.   Indeed,
it does not appear that, even if Smith contemplated that Chandler
should assume his duties and responsibilities, he had authority from
the company to constitute Chandler its vice-principal.   Looking to
the facts to which the plaintiff testified, rather than to the mere
statements of his conclusions therefrom, it is to be gravely doubted
whether Smith really intended to place Chandler in authority over
the hands with whom he was ordinarily engaged at work in the ca-

pacity of a fellow-servant. While it is true that Chandler did state, as matter of conclusion, that he was "in charge of the work," that he was "acting foreman that day," and that he "took Mr. Smith's place," his statements as to what actually occurred tend strongly to negative the idea that Smith so intended. When he left the hands, he addressed them all, and in substance told them to continue at work where they were. He did not, so far as appears, undertake to place any one of them in authority over the others; nor was it shown that, on any previous occasion, he had designated Chandler to act as his substitute in managing the hands and directing the work while he was temporarily called away. The testimony as a whole bears the inference that when Smith left on the particular occasion now under consideration, Chandler usurped the right to direct his colaborers in the prosecution of the work in which they were engaged, and that they tacitly assented to his exercising such control over them. Clearly, Chandler can not be said to have been clothed with complete authority in the premises, for it distinctly appears that he continued, as was expected of him, to perform his usual duties as a mere laborer. While it is now an established rule that the testimony of a plaintiff in his own behalf should be taken most strongly against him (*Southern Bank* v. *Goette,* 108 *Ga.* 796, following *Railroad Company* v. *Evans,* 96 *Ga.* 481), it will not do to say that he is to be conclusively bound by his statements of mere conclusions, when, in view of the facts testified to by him, it affirmatively appears that such conclusions are not in accord with the precise truth in regard to the matter under investigation. We are accordingly of the opinion that the case ought to have been submitted to the jury under proper instructions from the trial court. *Judgment reversed. All the Justices concurring.*